IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVELYN K. N., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:23-CV-00045-JFJ |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Evelyn K. N. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 33-year-old female, applied for Title II disability insurance benefits and Title VXI supplemental security income benefits on December 14, 2017, alleging a disability onset date of December 22, 2016, later amended to March 26, 2018. R. 214-220, 1810-1811. Plaintiff claimed she was unable to work due to conditions including post-traumatic stress disorder, anxiety, depression, left shoulder injury, and left elbow injury. *See* R. 262. Plaintiff's claims for benefits were denied initially on April 26, 2018, and on reconsideration on July 17, 2018. R. 59-132. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on July 24, 2019. R. 34-58. The ALJ issued a decision on August 19, 2019, denying benefits and finding

Plaintiff not disabled because she could perform other work existing in the national economy. R. 13-26. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 1-3. This Court reversed and remanded the ALJ's decision and, following remand from the Appeals Council, a new ALJ held a second hearing on September 22, 2022. R. 1845-1878, 1908-1927. The ALJ issued a second decision on October 13, 2022, again denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 1810-1836. According to the Commissioner, exceptions were not filed, and the Appeals Council did not assume jurisdiction, making the ALJ's decision the final decision of the Commissioner subject to judicial review. *See* ECF No. 11 at 1.

The ALJ found Plaintiff's date last insured was September 30, 2020. R. 1813. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of March 26, 2018. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; obesity; depressive disorder; anxiety disorder; and post-traumatic stress disorder (PTSD). *Id.* The ALJ found her impairments of hypertension, left shoulder pain, and left elbow pain to be non-severe. R. 1813-1814. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 1814-1819. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the area of understanding, remembering, or applying information, and moderate limitations in the three areas of (1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself. R. 1816-1819.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of sedentary work as follows:

4

> The claimant is able to lift, carry, push or pull up to five pounds frequently and 10 pounds occasionally. She is able to sit up to six hours in an eight-hour workday and is able to stand and/or walk up to two hours in an eight-hour workday. The need to change positions can be accommodated by the 15 minute morning and afternoon break and the 30 minute lunch period. The claimant occasionally is able to climb ramps or stairs, stoop, kneel, crouch or crawl. The job should not involve climbing ladders, ropes or scaffolds. The claimant occasionally is able to reach. The job should not involve lifting overhead. The claimant occasionally is able to handle or finger. The job should not involve work that requires the individual to look down more than occasionally during an eight-hour workday. The claimant is able to understand, remember, and perform simple and some complex tasks, with routine supervision. She is able to sustain attention and concentration for up to two hours at a time, with routine breaks when performing simple and some complex tasks. She is able to sustain the mental demands associated with performing simple and some complex tasks throughout an ordinary workday or wokweek. The claimant is able to interact with supervisors as needed to receive work instructions. She is able to work in proximity to co-workers but job should not involve teamwork or other work where close communication or cooperation with co-workers is needed in order to complete work tasks. The job should not involve interacting with public. The job should involve no more than ordinary & routine changes to work setting or work duties.

R. 1819-1820. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 1833-1834. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform the unskilled sedentary job of Surveillance System Monitor. R. 1834-1835. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 1835. Based on the VE's testimony, the ALJ concluded this position existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Plaintiff raises three points of error in her challenge to the denial of benefits: (1) the ALJ failed to properly consider the medical source opinions; (2) the ALJ failed to properly consider Plaintiff's allegations; and (3) the ALJ's RFC assessment is not supported by substantial evidence. ECF No. 7.

5

IV.     **Analysis**

   A.     **ALJ Properly Incorporated Agency Psychological Opinions into RFC**

Plaintiff argues the ALJ failed to properly incorporate the state agency psychological reviewers' opinions into the RFC. *See* R. 74, 89, 111, 129 (opinions of stage agency reviewing psychologists Jason Gunter, Ph.D., and James Sturgis, Ph.D.). For claims filed after March 27, 2017, such as Plaintiff's claims, 20 C.F.R. §§ 404.1520c and 416.920c provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion, based primarily on an opinion's supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In this case, agency reviewing psychologists Dr. Gunter and Dr. Sturgis both opined that Plaintiff could perform simple and more complex tasks of 1-4 steps with routine supervision; could interact appropriately with co-workers and supervisors for incidental work purposes but should avoid contact with the public; and could "adapt to [a] work setting and *some forewarned changes in a usually stable work setting.*" R. 74, 89, 111, 129 (emphasis added). The ALJ summarized the agency psychologists' identical opinions and found them to be persuasive. R. 1831. In finding the opinions persuasive, the ALJ articulated the factors of supportability and consistency supporting the agency reviewers' opinions. *Id.* (citing R. 69, 84, 105, 123). The ALJ found the opinions and the record to be consistent with limiting Plaintiff to simple and complex tasks and limited contact with co-workers and no contact with the public, as stated in the RFC. *Id.*

In her briefing, Plaintiff does not take issue with the ALJ's persuasiveness finding. Rather, Plaintiff argues the ALJ's RFC was flawed, because the ALJ found the agency opinions persuasive

6

but failed to incorporate their specific opinion that Plaintiff could adapt to "some forewarned changes." Plaintiff alleges the RFC, which provides that Plaintiff's job "should involve no more than ordinary & routine changes to work setting or work duties," is insufficient to include the limitation of "some forewarned changes" provided in Dr. Gunter and Dr. Sturgis' opinions. Plaintiff argues the "forewarned changes" limitation would not have been articulated in the agency reviewers' RFC if it had no meaning. Plaintiff further contends these two concepts are different, because all jobs require some changes, but not necessarily "forewarned changes."

Plaintiff's argument is unpersuasive. The ALJ aligned the RFC with Dr. Gunter and Dr. Sturgis' opinion regarding Plaintiff's ability to adapt to changes in a work setting, adopting their opinion nearly verbatim into the RFC. R. 1820. The ALJ's inclusion of the "ordinary & routine changes" limitation adequately incorporates the "some forewarned changes" limitation. The Court is not persuaded that "some forewarned changes" is a meaningfully distinct concept from "ordinary & routine changes" for purposes of the adaptability limitation, and Plaintiff cites no authority in support of such a proposition. Based on the plain language, "forewarned" changes are akin to "ordinary and routine" changes, because they both are changes that can be expected and anticipated by the worker.

Further, contrary to Plaintiff's argument, the ALJ was not required to precisely adopt Dr. Gunter and Dr. Sturgis' opinions when finding them persuasive. The ALJ's RFC need not correspond directly to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that

category"). Considering the agency reviewers' opinion along with other evidence in the record, the ALJ appropriately limited Plaintiff to jobs that "involve no more than ordinary & routine changes to work setting or work duties." R. 1820.

Plaintiff relies on an unpublished opinion of this Court for the proposition that the state agency reviewer's opinion that the claimant could adapt to a work environment with "forewarned changes" must be fully adopted into the ALJ's RFC. *See Fritz v. Berryhill*, No. 16-CV-411-PJC, 2017 WL 4220428, at *3-4 (N.D. Okla. Sept. 22, 2017). Plaintiff's reliance on *Fritz* is misplaced. In *Fritz*, the judge reversed the ALJ's decision where the ALJ did not *discuss* an opinion from the agency psychological reviewers, which stated that the claimant had limitations regarding ability to adapt to changes. *Id.* The court concluded the ALJ's error was not harmless, because the RFC did not include *any* limitation on the claimant's ability to adapt, leaving the court unable to determine why the RFC appeared to be inconsistent with the agency reviewers' opinion. *Id.* Here, the ALJ did expressly discuss and adopt Dr. Gunter and Dr. Sturgis' opinion regarding adaptability, apart from the specific "some forewarned changes" language, into the RFC. The ALJ instead adopted a limitation of "no more than ordinary & routine changes to the work setting or work duties," which the Court finds to be sufficient regarding adaptability.

  B.  **ALJ's Consistency Analysis Was Proper**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely

to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 1830. As support, the ALJ explained that Plaintiff testified to neck pain that caused difficulty holding things, turning her head to the left and right, and looking downward. R. 1832. Plaintiff testified she sometimes dropped things, had

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

difficulty making a fist, and could look down, left, or right for approximately three minutes before needing to take a break. *Id.* Plaintiff testified her neck pain radiated into both of her arms but was worse on the left side, and she had considered neck surgery but did not want to have it until her lumbar spine pain was "figured out." *Id.* Earlier in the decision, the ALJ summarized other parts of Plaintiff's testimony, including her daily activities and her ability to sit for 30 minutes at a time. R. 1820.

The ALJ found Plaintiff's testimony was not supported by the medical record regarding the alleged severity or persistence of her neck pain. R. 1832. The ALJ then reviewed relevant medical records, including treatment for neck pain that worsened with head movement and with repetitive activities. *Id.* The ALJ noted that Plaintiff's physician assessed neck muscle strain in March 2018, and x-rays showed loss of lordosis but nothing acute. *Id.* (citing R. 1511). The ALJ further noted that a nurse completed a Physical Disability Parking Placard Application for Plaintiff in May 2018, which stated that Plaintiff had difficulty walking but that her condition did not affect her ability to drive safely. *Id.* (citing R. 1535). The ALJ noted that driving a motor vehicle would require that Plaintiff turn her head from side to side. *Id.*

The ALJ reviewed additional records relating to the severity of Plaintiff's neck pain between August 2018 and July 2022, including a cervical spine MRI performed in April 2022, which showed cervical spondylosis superimposed on a congenitally narrowed cervical spinal cord. R. 1833. The ALJ concluded that, despite Plaintiff's allegations that she had neck pain that caused difficulty turning her head to either side and looking downward, Plaintiff consistently reported that prescribed medication provided satisfactory pain control and no changes to her pain. *Id.* (citing R. 2085, 2159, 2182, 2203, 2214, 2255, 2272, 2278, 2283). The ALJ further explained that, although Plaintiff reported that numbness radiated into her upper extremities, an EMG showed

10

only mild radiculopathy.  *Id.* (citing R. 2074).  Based on the evidence as a whole, the ALJ concluded Plaintiff was limited by her impairments, but those limitations could be adequately accommodated.  *Id.*

Plaintiff argues the ALJ's consistency analysis was erroneous, because the ALJ failed to consider (1) her inability to sit longer than 30 minutes due to pain, (2) her limited ability to move her head from side to side, and (3) her daily activities in a "meaningful way."

1. **Sitting Ability**

Plaintiff contends the ALJ failed to consider her allegations related to sitting ability.  In support, she points to her own testimony that she was unable to sit in a motorized shopping cart for longer than 30 minutes and spent 75 percent of her day in a recliner (R. 45, 48, 1867), her statement in a March 2018 function report that she could sit no longer than 30 minutes (R. 284), her statements in an August 2018 function report that she would sit in a recliner 75 percent of the day and got stiffness and pain when sitting after 20 to 30 minutes  (R. 323, 324, 328), and her statements to care providers that her neck, shoulder, and back pain increased with prolonged sitting (R. 1304, 1485, 1691).

Plaintiff's argument is unavailing.  The ALJ found Plaintiff's degenerative disc disease to be a severe impairment, and the RFC included significant physical limitations.  R. 1813, 1819.  The ALJ discussed Plaintiff's testimony regarding her limited sitting ability due to back and neck pain, and the ALJ provided legitimate reasons for discounting Plaintiff's statements regarding the severity of her neck and back pain.  R. 1832-1833.  While the ALJ did not specifically address consistency of Plaintiff's statements related to her sitting ability, the ALJ noted that Plaintiff repeatedly reported good pain control with medication.  R. 1833 (citing R. 2074, 2085, 2159, 2182, 2203, 2214, 2255, 2272, 2278, 2283).  Other than her own allegations, Plaintiff does not point to

additional evidence that would support a need to remain in a recliner throughout most of the workday.

### 2. Ability to Turn Head

Plaintiff contends the ALJ did not properly consider her ability to turn her head side to side. In this regard, the ALJ specifically discussed Plaintiff's testimony that her neck pain caused difficulty turning her head side to side and looking downward. The ALJ explained that Plaintiff nonetheless consistently reported that prescription medication provided satisfactory pain control and no changes to her pain. R. 1833 (citing R. 2074, 2085, 2159, 2182, 2203, 2214, 2255, 2272, 2278, 2283). The ALJ additionally explained that the nurse completing Plaintiff's application for a physical disability parking placard stated that Plaintiff's physical condition did not affect her ability to drive safely, and driving a motor vehicle would require that Plaintiff turn her head from side to side. R. 1832 (citing R. 1535).

Plaintiff acknowledges the ALJ's discussion but argues the ALJ's reasoning was insufficient and indicative of "picking and choosing." Plaintiff contends the ALJ's discussion did not account for her testimony that turning her head left and right affected her the most when she drove (R. 50); observations of pain at medical appointments with rotation of the cervical spine (R. 1507, 1509, 1511, 1686, 2067, 2072); or Plaintiff's alleged need to refrain from activity to achieve "good pain control" or pain reduction (*see* R. 1447, 1463, 1467, 1508, 1689).

Plaintiff's arguments fail. Contrary to Plaintiff's argument, the ALJ did not selectively ignore Plaintiff's complaints or observations of pain with movement. Rather, the ALJ appropriately found that medications managed her pain well and her care provider indicated Plaintiff was able to drive safely despite her physical impairments. R. 1832-1833. The ALJ was not obliged to address Plaintiff's testimony that driving affected her neck pain or to explain how

12

much she could turn her head while driving, where the ALJ pointed to evidence that Plaintiff was able to drive safely and medications managed her neck pain. The ALJ addressed Plaintiff's complaints of worsening neck pain with movement of her head and repetitive activities. R. 1832. The ALJ also acknowledged several clinical visits at which Plaintiff demonstrated neck or shoulder pain. R. 1832-1833 (citing R. 1511, 1685, 1686, 1675, 2072). The ALJ further reviewed imaging of Plaintiff's neck, noting that an EMG revealed only mild radiculopathy. R. 1833 (citing R. 2074). The Court finds the ALJ's consistency findings regarding the severity of Plaintiff's neck pain were supported by substantial evidence.

### 3. Daily Activities

Finally, Plaintiff contends the ALJ's consistency findings failed to discuss Plaintiff's daily activities in any "meaningful way" and were merely conclusory. Plaintiff does not explain what specific activities were insufficiently discussed. The Court rejects Plaintiff's argument. The ALJ discussed Plaintiff's testimony regarding her activities, including that she spends most of the day reclining, and has difficulty holding things, dressing, sleeping, preparing food, and folding laundry. R. 1820-1821, 1832. As explained above, the ALJ provided a thorough consistency analysis addressing Plaintiff's complaints regarding the severity and persistence of her neck pain. R. 1832-1833. The ALJ is not required to comment on the consistency of every statement Plaintiff made. *See Keyes-Zachary*, 695 F.3d at 1169 (finding credibility analysis sufficient where, "although the ALJ may not have identified any specific incredible statements as part of his evaluation of [claimant's] hearing testimony, his approach performed the essential function of a credibility analysis by indicating to what extent he credited what she said when determining the limiting effect of her symptoms"); *Bales v. Colvin*, 576 F. App'x 792, 800 (10th Cir. 2014) (same).

In sum, the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and SSR 16-3.

### C. Plaintiff's RFC Is Supported by Substantial Evidence

Plaintiff argues the ALJ should have accounted for Plaintiff's limited sitting ability in determining the RFC, based on medical findings, pain treatments, and Plaintiff's own description of pain. ECF No. 7 at 11-12. Beyond her own allegations, Plaintiff points specifically to a November 2020 lumbar CT myelogram, which showed discectomy changes at L4-S1 without recurrent disc herniation, multilevel spondylotic changes of the lumbar spine, and no focal neural compression. R. 2054-2055. Plaintiff also points to observations of reduced lumbar range of motion due to pain and attempts at pain treatment. *See, e.g.*, R. 2058 (Plaintiff's physician observed significant restriction in lumbar range of motion and recommended a spine stimulator in November 2020).

Plaintiff's argument is unavailing. As explained above, the ALJ discussed Plaintiff's pain allegations and medical findings related to her back and neck, and he concluded she could perform sedentary work, sitting six hours per workday. The ALJ discussed the records Plaintiff describes (R. 1827-1828), acknowledged Plaintiff's complaints of back pain, and still found Plaintiff was capable of sitting for six hours per workday. In the reply brief, Plaintiff complains that the ALJ did not note every finding listed in the lumbar CT myelogram. ECF No. 12 at 3. However, the ALJ accurately reproduced the "impressions" stated at the conclusion of the CT myelogram, and Plaintiff fails to explain how this discussion was inadequate or improper as related to her lumbar issues. *See* R. 1827 (citing R. 2054-2055).

Plaintiff identifies no legitimate error in the ALJ's analysis of the cited records, and these records do not definitively demonstrate Plaintiff was more limited in her sitting ability than the

ALJ found.  Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 20th day of February, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**